# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 2:04-cr-00027-MR-WCM-1

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ROGER DALE CHARLES, II, )<br>)<br>Defendant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion for Reduced Sentence under The First Step Act of 2018 [Doc. 119]. The Defendant is represented by the Federal Public Defender for the Western District of North Carolina.

**I.    BACKGROUND**

In 2003, police received numerous reports that the Defendant Roger Dale Charles, II was selling crack cocaine out of his home in Murphy, North Carolina. In December 2003, the police executed a search warrant at the Defendant's home and seized 54 grams of crack cocaine; more than 100 dosage units of prescription drugs, including Oxycodone, Methadone, and Alprazolam, and morphine; and a small amount of marijuana. [PSR at ¶¶ 7–

15]. Police also seized two firearms and more than $2,000 in cash. [Id. at ¶ 15]. The Defendant's girlfriend told police that the Defendant bought his crack cocaine from a source who lived in Florida. [Id. at ¶¶ 16-17].

The Defendant previously had been convicted in Florida of burglary, felony battery on a law enforcement officer, felony armed burglary with a deadly weapon, felony escape, and possession of cocaine, receiving sentences of three years in prison initially for most of those offenses. [Id. at ¶¶ 58, 60, 62, 65]. When the Defendant was released and violated the terms of his probation, that sentence was increased to seven years in prison. [Id. at ¶¶ 58, 60, 62].

A federal grand jury indicted the Defendant and charged him with: one count of possession with intent to distribute more than 50 grams of crack cocaine, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [Doc. 2 at 1-2]. The Government filed an Information under 21 U.S.C. § 851, giving notice to this Court and the Defendant that the Government intended to seek an enhanced penalty based on the Defendant's prior felony drug offenses. [Doc. 3]. The Defendant proceeded

to trial, and a jury found him guilty of the drug trafficking and felon-in-possession offenses and not guilty of the § 924(c) firearm offense. [Doc. 55]. The jury also found that at least 50 grams of crack cocaine were attributable to the Defendant. [Id. at 1].

The probation officer submitted a presentence report, calculating a preliminary adjusted offense level of 33 based on the Defendant's responsibility for 54 grams of crack cocaine. [PSR at ¶¶ 29, 34, 46]. The probation officer also found that the Defendant was a career offender and an armed career criminal under the Armed Career Criminal Act (ACCA) based on the Defendant's prior convictions for battery on a law enforcement officer, armed burglary, and escape and that the career-offender guideline provided for an adjusted offense level of 37. [Id. at ¶¶ 47, 109]. Based on a total offense level of 37 and a criminal history category of VI, the Sentencing Guidelines advised a range of between 360 months and life in prison. [Id. at ¶ 110]. The Defendant faced a statutory mandatory minimum of 20 years and a maximum of life in prison for the drug trafficking offense and a statutory mandatory minimum of 15 years and a maximum of life in prison for the felon-in-possession offense. [Id. at ¶ 109].

At sentencing, this Court adopted the findings of the Presentence Report and classified the Defendant as both a career offender and an armed

career criminal. This Court sentenced the Defendant to 360 months' imprisonment and 10 years of supervised release on his drug trafficking offense and 360 months' imprisonment and three years of supervised release on his felon-in-possession offense, to run concurrently. [Doc. 64 at 2, 3]. The Defendant's convictions and sentences were affirmed on direct appeal. United States v. Charles, 195 F. App'x 133 (4th Cir. 2006) (per curiam).

Ten years later, in May 2016, the Defendant filed a motion pursuant to 28 U.S.C. § 2255 to vacate his sentences based on the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551, 2563 (2015) (holding that the "residual clause" used to define a sentence-enhancing "violent felony" in ACCA was impermissibly vague), and Welch v. United States, 136 S. Ct. 1257, 1265 (2016) (making Johnson retroactively applicable to cases on collateral review). [Doc. 107; Civil Case No. 1:16-cv-00136-MR ("CV"), Doc. 1]. Specifically, the Defendant argued that three of his four prior convictions no longer qualified as violent felonies under the ACCA and thus his armed career criminal designation was erroneous. The Defendant further argued that under Johnson, those same offenses could not be used to designate him as a career offender under the Sentencing Guidelines for purposes of enhancing his sentence for the drug trafficking conviction. [Id.].

The Court placed the Defendant's § 2255 motion in abeyance pending the Supreme Court's decision in Beckles v. United States, in which the Supreme Court ultimately held that "the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause." 137 S. Ct. 886, 890 (2017). [CV Doc. 5]. Following the decision in Beckles, the Government moved to dismiss the Defendant's § 2255 motion. [CV Doc. 6]. This Court granted the Government's motion, noting that the Defendant's challenge to his career offender status was foreclosed by Beckles and therefore his 360-month sentence on the drug trafficking offense was valid. Because the Defendant had been validly sentenced to the same term for his drug trafficking offense and the two terms of imprisonment were imposed concurrently, this Court declined to decide whether the Defendant's 360-month term of imprisonment for his firearm conviction was invalid under Johnson under the concurrent sentence doctrine. [Doc. 109; CV Doc. 8].

The Defendant appealed. [Doc. 110]. On appeal, the Court of Appeals affirmed this Court's application of the concurrent sentence doctrine and its decision to leave the Defendant's sentence for illegal possession of a firearm unreviewed. United States v. Charles, 932 F.3d 153, 162 (4th Cir. 2019). However, the Court of Appeals noted that following the parties' briefing on appeal, the First Step Act of 2018 was enacted, allowing district courts to,

5

*inter alia*, apply the Fair Sentencing Act of 2010 retroactively to sentences for certain crimes committed before August 3, 2010. Id. Because this Court was not able to consider the impact of the First Step Act in the first instance, the Court of Appeals remanded this matter. In so doing, the Court of Appeals noted that should this Court determine that the Defendant's drug trafficking sentence should be reduced pursuant to the First Step Act, the remand would enable this Court to consider the merits of the Defendant's § 2255 motion regarding his firearm sentence as well. Id. The Court of Appeals issued its mandate on September 17, 2019. [Doc. 116].

On February 10, 2021, the Defendant filed his motion for a reduction of his sentence pursuant to the First Step Act. [Doc. 119]. In its Response, the Government agrees that the Defendant is eligible for a reduction in his custodial sentence but requests that the Court exercise its discretion and deny his motion. [Doc. 122]. The Defendant filed a Reply on March 10, 2021. [Doc. 123].

Having been fully briefed, this matter is ripe for disposition.

## II. DISCUSSION

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. 111-220, went into effect. Section 2 of the Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, it

6

raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. 115-391. Section 404 of the Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

The Defendant is eligible for relief under the First Step Act because he was convicted of a "covered offense" under Section 404(a)'s definition. See Gravatt, 953 F.3d at 263-64. His offense was committed before August 3,

2010; he was subjected to the enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Further, the Defendant's sentence has not been previously reduced by the operation of Sections 2 or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

Having determined that the Defendant is eligible for relief under the First Step Act, the Court must next determine whether in its discretion any such relief should be afforded and, if so, to what extent. See United States v. Wirsing, 943 F.3d 175, 180 (4th Cir. 2020); First Step Act § 404(b), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

The Court begins its analysis with the calculation of the appropriate Guidelines range. The Defendant urges the Court to resentence him within the range of imprisonment that the current Sentencing Guidelines advise were he sentenced today. If the current Guidelines manual were applied, the Defendant argues, his career offender and ACCA enhancements would no longer be applicable, and thus his advisory Guidelines range would be 100 to 125 months. [Doc. 119 at 8]. This Court, however, is not required to recalculate the Defendant's advisory Guidelines range based on the current

8

Guidelines manual.  See United States v. Davis, 824 F. App'x 191, 193 (4th Cir. 2020) ("it was not incumbent upon the district court to consider a revised Guidelines range in accordance with the current version of the Guidelines manual").  The First Step Act authorizes the Court to "impose a reduced sentence," First Step Act § 404(b); it does not require the Court to conduct a plenary resentencing.  See Wirsing, 943 F.3d at 183 (holding that § 3582(c)(1)(B) governs First Step Act motions).

The Fourth Circuit's recent decision in United States v. Chambers, 956 F.3d 667 (4th Cir. 2020), reh'g denied (July 8, 2020), does not compel a different result.  In Chambers, the Court of Appeals held that a district court is required to correct errors under United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), when considering whether to reduce a defendant's sentence under the First Step Act.  Chambers, 956 F.3d at 668.  The Court of Appeals, however, limited its holding requiring the correction of Guidelines errors to "any Guidelines error deemed retroactive." Id.  The Fourth Circuit did not suggest in Chambers that a district court is required to recalculate a defendant's Guideline range using the current Guideline manual.

Here, even if the Fair Sentencing Act had been in effect at the time the Defendant committed his offense, the Sentencing Guidelines still would have advised a sentence of between 360 months to life imprisonment because of

9

his status as a career offender.  See 21 U.S.C. § 841(b)(1)(B) (2004). Because the Defendant's offense level is determined by his career offender status, the First Step Act has no effect on his advisory Guidelines range.

Having determined the appropriate Guidelines range, the Court now turns to the relevant § 3553(a) factors in order to determine whether a reduction of his drug trafficking sentence is warranted.  Here, the Court finds that the Defendant's history and characteristics weigh against such a reduction.  The Defendant has an extraordinary criminal history.  At the time he committed the offenses in this case, he had accrued 18 criminal history points, well above the 13 criminal history points needed to place him in criminal-history category VI.  [PSR at ¶ 75].  His criminal history includes violent offenses such as armed burglary and battery of a law enforcement officer.

Considering the Defendant's history and characteristics, the need for deterrence, and the need to protect the public from the Defendant's continued criminal misconduct, the Court concludes that the Defendant's sentence of 360 months—a sentence at the bottom of the range the Guidelines would have advised had the Fair Sentencing Act been in effect when he committed his offenses—remains appropriate.

10

The Defendant argues that the § 3553(a) factors support a reduced sentence to time served in order to avoid unwarranted sentencing disparities and to reward the Defendant for his post-sentencing rehabilitation.

First, with respect to unwarranted sentence disparities, the Defendant argues that a sentence of time served would be warranted to address the disparity between the range that the Defendant faced at his original sentencing and the range that a similarly situated offender would face today. [Doc. 119 at 8]. This argument, however, is misplaced. While the Defendant may not have been classified as a career offender had he been sentenced today, that does not change the fact that he was properly classified as a career offender at the time he was sentenced. The change in intervening law and guidelines on which the Defendant relies to argue that his career offender designation was erroneous were not made retroactive and therefore have no effect on the validity of the Defendant's career offender designation.

With respect to the Defendant's efforts at rehabilitation, the Fourth Circuit has held that the Court must provide an individualized explanation for denying relief under the First Step Act when the defendant presents evidence of post-sentencing rehabilitation. United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021). In so doing, the Court may "consider the facts of [a

defendant's] original transgressions," but also must "at least weigh [the defendant's] conduct in the years since [his] initial sentencing[.]" Id.

Here, the Defendant points out that he has completed approximately 39 educational programs and work assignments, including several courses aimed at earning his GED. [See Doc. 120: Supp. PSR at 4]. He has also completed programs focused on securing steady employment, including food service; plumbing; resume writing; skills for job success; and job interview skills. [Id.]. The Defendant contends that his focus on developing these skills show that he is focused on putting himself in a position to have a successful reentry into the community. [Doc. 119 at 18].

While the Defendant's attempts at rehabilitation are commendable, the Court notes that since his initial sentencing, the Defendant has accrued a significant disciplinary history within the Bureau of Prisons. The Defendant has committed 59 disciplinary infractions since 2005, including nine assaults, three of which resulted in serious injury; four instances of fighting; and ten instances of possessing a dangerous weapon. [Doc. 120: Supp. PSR at 3-4]. The Defendant has committed multiple disciplinary infractions nearly every year since 2005, including three infractions in 2020. [Id.]. Thus, although the Defendant has made some attempts at rehabilitation, the Court does not find that his positive post-sentencing conduct outweighs his

negative post-sentencing conduct or the other sentencing factors identified above.

For all these reasons, in the exercise of its discretion, the Court denies the Defendant's request for a reduction of his custodial sentence for the drug trafficking conviction under the First Step Act.[1]  The Court will, however, reduce his term of supervised release for the drug trafficking conviction to a term of eight years.

Because the Court has determined that a reduction of the Defendant's drug trafficking sentence is not warranted under the First Step Act, the Court concludes, for the reasons stated in its previous Order [Doc. 109], that the Defendant's § 2255 motion challenging his firearm sentence should be dismissed pursuant to the concurrent sentence doctrine.  See Charles, 932 F.3d at 162 ("If . . . the court were to decide not to reduce [the Defendant's] sentence for his drug-trafficking offense under the First Step Act, it could then rely on the concurrent sentence doctrine—as it previously applied the doctrine and as we affirm here—to dismiss [the Defendant's] § 2255 motion.").

---

[1] Even if this Court were required to recalculate the Defendant's sentence using the current manual, as argued by the Defendant, for the reasons stated herein, the Court would still exercise its discretion and decline to reduce the Defendant's sentence.

13

With respect to the Defendant's Motion, the Court further finds that the Defendant has not made a substantial showing of a denial of a constitutional right. <u>See generally</u> 28 U.S.C. § 2253(c)(2); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000)). The Defendant has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the motion to vacate states a debatable claim of the denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000). As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduced Sentence under The First Step Act of 2018 [Doc. 119] is **GRANTED IN PART** and **DENIED IN PART**, and the Defendant's term of term of supervised release for his drug trafficking conviction is hereby reduced to a term of **eight (8) years**. All other terms and conditions of the Defendant's Judgment [Doc. 64] shall remain in full force and effect.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Vacate, Set Aside, or Correct Sentence [Civil Case No. 1:16-cv-00136-MR, Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

The Clerk is respectfully directed to prepare an Amended Judgment in accordance with this Order. The Clerk is further directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Signed: March 13, 2021

Martin Reidinger
Chief United States District Judge